Let me have a handout. Let's see, first we will hear from Mr. McMickle for Carolina Casualty Insurance. Good morning. Good morning, Your Honors. May it please the Court. I'm Scott McMickle. I represent Carolina Casualty Insurance Company, and the good news is that this is a pretty simple case. I suppose you probably hear that from lawyers maybe all the time, but I don't say that from an advocacy standpoint. I really do think it's a fairly simple case. The limited question before this Court is whether or not my client, Carolina Casualty         I don't think so. I don't think so. I don't think so. I don't think so. I don't think so. to defend their client, Schlumberger, in a tort suit. The duty to defend analysis, which you are probably familiar with in Texas, is a lot like other states, which is, basically you look at the allegations and the complaint, compare those to the policy, and then you determine whether or not there is a duty to defend. It's a legal question, and this is de novo, as you know. So it's undisputed that the tort plaintiff in this case made allegations against Schlumberger that were solely, solely related to Schlumberger's own or independent negligence. There was no allegation, and this is an undisputed fact, that Carolina Casualty's named insured, or excuse me, that Schlumberger was responsible somehow for Carolina Casualty's insured alleged negligence. Now... Named insured is, remind me, what's the name of the company? Spotted Lakes. Spotted Lakes is the named insured under this policy? Yes, sir. So, Your Honor, I don't usually do this, but I gave this out to the clerk, and so you've heard what the allegations are. Of course, yes, sir, I've shared that. And so the operative language of the additional insured endorsement is at the top of this page, and first thing I would say is that it's undisputed that Schlumberger had a contract with Spotted Lakes, which is an insured contract, so the first part of that, maybe two lines, was satisfied. The operative text is this text, but only to the extent of your negligence, okay? So... Any person or organization that requires you, remind me who you is. These insurance contracts always have to, like, parse every single word. Who's you? That's my next point. Okay. You is referred to, and it's at record 742, you and your are the named insured Spotted Lakes. That's Spotted... You is Spotted Lakes. Okay. Yes. Thank you. So what's going on here is Carolina Casualty issues an endorsement to a policy to Spotted Lakes that says, hey, we'll cover folks like Schlumberger, but only to the extent of your negligence. All right? And we'll talk about how the district court got all twisted around the axle, but it really was that next phrase that the court almost read in reverse that I think got the district court to the point that it needs reversing in this case, but we'll talk about that in a minute. So really, the question is, in the context of a case where the allegations are that Schlumberger is liable for its own negligence or independent negligence, can this additional insured endorsement afford coverage to Schlumberger for that? And the very clear answer is no. So they have to convince you that it would be reasonable to interpret this language to cover Schlumberger for its own independent negligence. Now, thankfully, we have very clear guidance from the Texas Supreme Court and from this court, and I put it at the bottom of this first page, and I'm reluctant to do that. It looks just so elementary that it almost seems like it's beneath the court. Well, I mean, as long as it's a citing a brief, right? Of course. Yes, sir. But really, you know, you asked a moment ago over the other counsel, do you have a couple of cases you can read? Well, if you read the Adafina case, or you read the Mid-Continent case, and then you read the South Carolina electric case that we cited, I think this is an easy discussion. Tell me this. So this endorsement, operative policy language, it replaced other language, right? So remind me, what was the language that it replaced? Because I think this was important to the district court, maybe? It was. And by the way, I think the court . . . I've never seen a rule of construction that says we have to look at what was replaced to interpret the plain language of what's there. That's really where the court went wrong. Sure. I get it. But one can be curious. What was replaced and why? Of course. The text was subpart E in the who is an insured provision of the trucker motor carrier coverage form, which simply says . . . it's giving insured status, and it says that anyone liable for the conduct of the insured is covered as an additional insured under the policy. So Carolina Casualty issues an additional insured endorsement with this text on it that replaces that language. So you ask why? Yeah, why? Well, insurance companies do a lot of things, and they don't have a specific explanation in some sort of form book somewhere that says we did exactly this for this reason. But the Ryder case in the reply brief that we cited gives a great explanation for this with some expert testimony from a man named Don Malecki, who I've known and seen speak at these insurance-type seminars, and what he says is that big companies like Schlumberger, when they contract with someone like Spotted Lakes, they don't want to have to get a policy that's that thick and read it all to figure out if they're an additional insured. What they want is a one-page endorsement that . . . and this is the blanket additional insured endorsement. And this is all . . . you know, insurance is a boring world, but it's standardized like everything else in our systems. I remember. I took it in law school. I thought it was very boring. So I will say that I'm glad . . . I had a very good . . . I had Austin Johnson for insurance, and he was excellent, a very good professor at LSU. Sometimes the content can't get past itself. So Your Honor, the . . . yes, the why. I believe the why is what I just told you. Does the new operative . . . does the endorsement limit what the previous language was? Well, I would say that it supplants it and it does a couple things. Number one, it gives you that piece of paper that is an absolute need in the transportation industry, which is what we just talked about in the Ryder case. The other thing is, is it focuses on . . . insured status starts with an entity like Schlumberger that has an insured contract with a contractor like Spotted Lakes, because that's really how business works in the construction, transportation-type world. You'll have a big company that contracts with folks like Spotted Lakes. They'll have master agreements, which are in the record here. This says, Spotted Lakes, you need to indemnify us for this, this, this, and this, and you also need to give us additional insured status under your policy, okay? So Spotted Lakes goes to its . . . frankly, I'm just going to hear exactly how it works. They go to their insurance agent, say, hey, I need an endorsement to satisfy these people so we can do business with them, and that's what a blanket additional insured endorsement would do. And, Your Honors, the South Carolina electric case, which is a federal district court case in South Carolina, it really shows this court how, in this sort of unique industry, there's two different types of additional insured endorsements. There's one that would cover them in this situation, and then there is one that doesn't, and we're in the lane that does not. Now, the Texas Supreme Court in the Adafina case and this court in the Mid-Continent case, all of which are in our briefs, clearly said that if an insurance company in Carolina Casualty's position wants to limit the extent of their additional insured coverage to somebody like Schlumberger, they have to put language in there like this. And, in fact, the quote in Adafina, which is quoting this court in the Mid-Continent case, says this, and this really, I think, ends this discussion, to be frank. It says, an insurer clearly embodies an intent to limit additional insured coverage to vicarious liability for the named insured's negligence by including limited language in the endorsement, such as vicarious liability for negligence of the named insured. That is what this language does. So, give me a scenario where, in your view, this language would indeed impose a duty to defend on your client. It happens all the time, Your Honor. Give me an example. Well, you see a lot about FedEx in the news, right? There's a terrible situation, I think, in Texas, a FedEx driver killed a little girl, right? It's a contract driver. So, FedEx and that, this real-life discussion is Schlumberger. The contract company, I don't know the name of it, is Spotted Lakes. Well, here's what's going to happen. The plaintiff's lawyer is going to sue the contractor, of course the driver, and they're also going to sue Federal Express. And they're going to claim that Federal Express exercised control over that driver to the extent that agency is present, and therefore Federal Express should be responsible. I mean, that happens in every catastrophic accident. I mean, I've handled a thousand death cases. It's always going to run upstream to the big fish. And that's why the big fish try to have indemnity agreements back down the line with additional insured sort of provisions to try to protect them. So very, very common, two different types of endorsements. We did exactly what the Texas Supreme Court said we should do if we wanted to clearly embody an intent to limit it. You said in one of the cases you were talking about, there are two different kinds of endorsements and one of them would have meant that they won in a situation like this, or that there would be a duty to defend. What is that language like? Well, Adafina and Mid-Continent were situations where the other endorsements were present. What does that language look like? That language would be something like, I'll read you the text from Adafina. Is a person or organization, this is who is an insurer, a person or organization for whom you have agreed to provide insurance, as is afforded by this policy, but that person or organization is insured only with respect to operations performed by you or on your behalf or facilities owned or used by you. So when the endorsement says, we'll cover you additional insured to the extent anything arises, if it has anything to do with our insured's work, that's over here. If it says we're going to only cover you to the extent of our insured's negligence, which is vicarious liability, it's over here. So the Mid-Continent, excuse me, the South Carolina electric case is on point. If you read the Adafina case and the Mid-Continent case, these quotes that I'm sharing with you are one paragraph out of 30 pages. So, but if you look at the cases that have subsequently cited that, for example, the Lancaster versus Farrell paving case, cites Adafina saying that the Texas Supreme Court reasoned that if the parties had intended to insure the additional insured for only vicarious liability, the endorsement could have simply referred to vicarious liability or the negligence of the insured, which is, again, exactly what our policy does. So Your Honor, here's the question I would ask Sloan-Berger is, where is there a case in the history of this country, there's additional insured provisions and contractors like this, I mean this isn't new stuff, this isn't some uncharted territory, where are the cases that say this text, but only to the extent of the name insured negligence, afford coverage to the entity in Sloan-Berger's position? There aren't any. Now, on the second page of this, and I didn't think, I thought I was going to have a lot of time and I ran out, but you'll see on the second page, this is Sloan-Berger's first attempt to change the language and suggest that somehow they have coverage. They have since, I think, abandoned that, is what it appears to be in the briefs. The trial courts of Sloan-Berger's interpretation, we put there, and really what happened is the trial court simply just took out the, but only to the extent of your negligence language and said, well, we'll cover Sloan-Berger if there's concurrent negligence. In other words, if Spotted Lakes is partly at fault, we're going to cover Sloan-Berger. All that does is take what was clear language in the vicarious liability additional insured column and put it over here, and it's just wrong. So one of the things that's real interesting, if you're honest, I'll flip to the... Counsel, to be clear, if we were to agree with your position, you would want us to reverse and render? Is that... Yes. These are cross motions for summary judgment, so you would expect us to render in your favor? I would, yes, sir. What seemed was weird to me, when I looked at what the trial court did, is they've got this arising out of phrase at the bottom, and the court said, well, that means this should be interpreted broadly and somehow take it from this column to this column. Well, unless we're reading backwards, which we're not, and we're not in Hebrew or Aramaic or anything like that, the arising out of phrase talks about the ownership, maintenance, or use of an auto. So the trial court just got it wrong there, and we would respectfully request that you reverse. You have some time for rebuttal, Mr. McMickle. Thank you. Could be five minutes. Yes, sir. Yes. Mr. Green, we'll hear from you for Sloan-Berger. Mr. McMickle. Thank you, Your Honor. Good morning. May it please the Court? I want to quickly respond to one of the first things that I heard, which was, and get clear on what I think this Court's, what its job is here. It is not for this Court to find that we had the most reasonable interpretation or a perfect interpretation or that it, you know, this Court knows, in fact, this Court in City of College Station, Judge Higginbotham, has clearly pointed out the burden, and it's a heavy burden that is on the carrier in this circumstance. All we need to show, is there a question? Is there some ambiguity here? Do they understand what we've got? I mean, would the judge or jury understand that? And I don't think, I think that in looking back in the Evesting case and whatever, and we'll look at quickly at Continental Casualty case, where they decided in that case, you know, there's, because it looks, appears to be illusory, because otherwise, there really is not going to get any coverage. I, about ten years ago, came here on a case called Obris Resources versus St. Paul. I was on the other side. I was trying to be, I was for the insured, but I came up here as an appellant. The judge, originally the judge said, you know, your interpretation is nonsensical. But the Court found, and I think it should in this case find their interpretation nonsensical, but it doesn't even have to prove that. All I have to show this Court is that my interpretation is a reasonable one. And as pointed out in the City of College Station and others, in Hudson Energy case, Texas Supreme Court, it doesn't even have to be better than theirs. It doesn't even have to, it just has to be outside of the parameters of reason. Now, I think in this case, one of the things that I found, I just could not believe, for example, that citing the Ryder case, which uses a designated, and discusses a designated insured provision, helps them. It proves my point. What we've heard before here, there's really three different provisions, and the Court, I think, was asking some questions that were trying to get to that. But let me start with what they're saying we ought to do. First of all, they say, our argument, and this is in the reply brief at page 21, Schlumberger's argument also ignores one of the fundamental purposes of additional insurance endorsement. Who says? Where's the evidence of that? Insurance carriers? Shippers, contractors, and the like, such as Schlumberger, typically require their subs or other contracting parties to obtain insurance coverage and name them as additional insurance. Absolutely. These parties, and then he says, these parties want simple, written assurance they will have coverage when they were sued for something that their contracting party did. Where did that assumption come from? While 2A1E does provide coverage for vicarious liability, and that's the original provision, and there is no dispute, by the way, that the original provision provides coverage for vicarious liability. And we don't argue with that. And I want to look at that language in a minute. But it says, while it does provide coverage, it is often buried within lengthy insurance policies and makes no reference to additional insurance. A separate, stand-alone additional insurance endorsement, like the one at issue here, can be provided to additional insurers and understood more easily. When I read that, I almost fell out of my chair. It is not easy to understand. You must find insurance law exciting if you almost fell out of your chair. But, you know, so do we agree? I think, I mean, I agree with you that the burden is on the insurer and that insurance policies are read against the insurer, the author of the policy. I think that's settled law. It would help me if you would walk through this endorsement and explain to me, given the allegations in this case, which I think that's sort of the operative factual world, the allegations of who did what, why this, under this language, if you could walk me through it and explain why Schlumberger is an insured under the language. Okay. First of all, Evanston, Etofini and some others say you can't, you need to look at the endorsement as a whole. You need to look at the policy as a whole. I don't think, I think short shrift was given to the fact that this policy replaces 1E or whatever it is. Yeah, I did ask about that. Yeah, and that's important because substantial language was changed by that fact. In fact, the provision originally said anyone liable for the conduct, well, that's pretty  If this is what the coverage is, anyone liable for the conduct of an insured described above, but only to the extent of that liability. That's what they're saying is additional insureds. If you're liable for that conduct, that's clearly vicarious liability. And that's very similar to the language that's used in Harbor versus Lewis. We need to drill down when he talks about, he pulls out of context footnote 20 of Evanston, which it talks about, well, parties know if they want to, they can, they can put a, give you an endorsement that shows vicarious liability. Well, why did they change it? Why didn't they just leave it alone? So what they do, they also argue two other endorsements and spend a lot of time talking about the Ryder case. The Ryder case talks about a designated insured endorsement. And, and what's interesting about that is that they kind of talk down to the insureds by saying, you know, they don't really understand, but you know, you have these unsophisticated people, they want another piece of paper. Now we didn't find out until really the briefing in this case, what their position really is. The position really is that, that not only, and, and by the way, we took their deposition to Mr. Sprague who does some of the underwriting, and he said, our, our new endorsement, the blanket insured endorsement, which I'm going to talk about, cost $1,000. Now if you look at the Harbor versus Lewis case, they talk about, well, insurers will not increase and alter the kind of risk insured because it's vicarious liability. So they don't charge for that. In our case, we're getting charged $1,000. What are we getting, what are we getting for our money? Or what is Spotted Lakes getting for their money? Because they have an obligation under the contract to provide an additional insured status. It's not limited to only vicarious liability in that contract. No allegation of that. I hear what you're saying. It would help me if you would walk through the language of the endorsement and explain to me why, given the allegations in this case, the Schlumberger would be an insured. Okay, so Schlumberger is an insured because, and by the way, we're not trying to say that, that we don't have to show any negligence on the part of, of Spotted Lakes. We're saying only that it has to be concurrent negligence. Okay. We think that's a reasonable interpretation, and that's kind of what happened in the. So any person or organization that requires you, so any person or organization is Schlumberger. No, that requires you, Spotted Lakes, under an insured contract. Any person or organization under the language there, does that refer to Schlumberger? Yeah, we're the any person or organization. And then you, that, that, Schlumberger requires you, Spotted Lakes, under an insured contract. And I think it's, it's, it's, it's stipulated that there is an insured contract, the master agreement, to provide insurance is considered an insured. So Schlumberger is considered an insured, but only to the extent of your negligence, so Spotted Lakes negligence, arising out of the ownership, maintenance, or use of a cover dog. Okay, explain to me why the allegations in this case make, sort of trigger that. It's triggered because they have been sued for negligence. Spotted Lakes was also sued for negligence. We were sued for negligence. They were sued for negligence by the Smiths. So there is alleged concurrent negligence. That's why the court said there was a duty to defend. And then we'll still have to deal with whether or not in actuality there's negligence, and that would get to the issue of indemnity. But for the purposes of this court hearing today, we're talking about whether or not this can be interpreted as concurrent negligence. You say concurrent, and there were some examples we went through with your opponent, hypotheticals, and I think you even mentioned earlier vicarious liability. How, I could see where this language would apply, would be implicated certainly in terms of vicarious liability, but when you say concurrent, weren't the allegations in the case that both parties were negligent for their own actions? That caused the accident to Mr. Smith. It was a single accident. Lumberjay was negligent, as alleged, and so was Spotted Lakes. Their driver was Campbell. Our driver was Edison. And together, you know, I think it was Campbell's vehicle that actually hit the plaintiff's vehicle after it first collided with our vehicle. So they were both sued. And so therefore, and I'm sure that there has been a lot of talk about some of the cases about Granite and Admiral and all those cases where they started to talk about, well, we need to, you know, loosen that up, and we'll look at those arising out of language in a broader context. But I'm not just saying that it does include the word negligence, okay? But it's different than the original provision. The original provision required liability for the conduct, and only for that. This just says negligence. Now, they say, well, you know, that must mean vicarious liability. Well, actually, I think there's plenty of case law out there. Englert's one of the ones I showed where the court says, I can't decide if this, to the extent that means if, and it just means if some of it occurs, or if they have to show the amount of it, which is what they're arguing. But I can't find indemnity, because it was under the indemnity requirement, which it has a completely different burden, as this quote well knows. We don't have to prove, as a matter of law, express negligence or indemnity. We just have to prove there's a question about the reasonableness of our position. And what makes it reasonable, too, is the fact we pay for it, the fact that it alters the original and takes out your liability. Now, if we look at, and then they talk about Evanston footnote 20. You go back and drill down. What is footnote 20? It cites a number of cases. One of the biggest ones is Harbor v. Lewis. Harbor v. Lewis is from Eastern District of Pennsylvania. And it says, by the way, first of all, it talks about the alteration of risk in a vicarious liability. It talks about the expert. We don't have any experts testifying that additional insurance is only for vicarious liability. In fact, I don't even think the ultimate decision in Harbor required that finding. But here's the language that they're talking about on page 805 of Harbor. It says, therefore, where the endorsement states that the additional insured coverage is provided, but only to the extent of liability resulting from occurrences out of negligence of reading company. In other words, if you just read or the negligence and say, oh, that's all it has to show to mean vicarious, what you need to do is drill down to these cases. And that's what one of the cases did when this was cited to them. The case of McIntosh v. Scottsdale. Another case that falls under the footnote 20 of Edgston. And it says, this case distinguishes Harbor v. Lewis, which says it was not laying down a policy that such additional insurance as a matter of law must mean vicarious liability. I think we can do with that idea. Second, it noted that it went off on specific language of Harbor. More importantly, the court was interpreting a clause that specifically provided that the policy only covered the additional insured to the extent of liability resulting from occurrences arising out of negligence. I didn't hear much about that provision or that change that is in the policy, because that's an important one. It is very clear. They knew how to make this vicarious liability endorsement, because they already had one. They also talked about the Ryder case and talked about the endorsement called the Designated Insured Endorsement, which is another thing they could have done, which specifically says, this endorsement covers anyone who is already covered. It's essentially what it says. And that is an interesting topic. So really, that is in their brief. If you look at it, I'm probably running out of time. Oh, you have five minutes left. But in their brief, they talk about, they say, the blank additional insured endorsement has more than one purpose. I think what they're saying is, it's basically a marketing tool. We want to make people feel good and give them a blanket of security. Well, it's a wet blanket if it really doesn't do anything. And they cite this guy from Amekli, Maliki, risk management. By the way, none of this, there's no expert in this case amongst the judge. But this guy says, one of the developments that does not really change anything but is still important is the Designated Insured Endorsement, this on page 26. It was introduced to appease those who not only want to be additional insureds, but also want a security blanket of proof. So is that really what, is that what we're talking about? This is just a security blanket of proof? I think that's what we are. And in fact, they act like the provision we have is the same as the Designated Insured Endorsement, which I would admit, if that's the one we chose in the evidence, they say, which is true, Spotted Lakes, I guess, had the opportunity to choose one or the other. But whatever, they got the one we've got, not the Designated Insured Endorsement, which clearly would cover only vicarious liability. They have one that changed the language, that took out for the liability. And does that raise a question in anyone's mind? Why? I would like this court to ask, why did you change it? What was the purpose of it? You've got three endorsements. The first one, built into it, costs no money. Second one, you pay $1,000. But we're going to say, we're going to say the Fifth Circuit, that it doesn't change anything. No, I take that back. It does change one thing. We go to page 28 of their brief. This is also important. It is notable that the Blanket Additional Insured Endorsement does change coverage in some respects, and I agree. Just not the manner Schlumberger would like. Specifically, incorporates the requirement that additional insured be a person or organization that requires Spotted Lakes to be provided insurance under an insured contract. Fortunately, we're not up here arguing about whether there's an insured contract. That's a given. Nobody disputes that. But that's what creates the initial insured status. That's a hoop we had to jump through. We had to have a contract.  We had to prove that to the judge. The judge, in his order, looked at the law, looked at the evidence, and determined that, yes, it's an insured contract. With that being the case, we've proven that we're an insured under the policy, because that's all we need to do. Now, we've got to say, and it limits it to proof that of some negligence arising out of the ownership, maintenance, or use of a covered auto. There's no dispute that Mr. Campbell, who is alleged to be negligent, was using a covered auto under the policy. That's not a dispute. That's different than the original denial letter we got that made it sound like that Schlumberger had to be driving a covered auto. That's not with this provision. Only Spotted Lakes has to be. And so, therefore, there is no question but that this, at least, should raise a question of, well, maybe that's a reasonable interpretation. Doesn't have to be the most reasonable. And it doesn't even have to be the intent of the carrier who just wanted to give us a document to make us feel better. It doesn't make us feel better. We contracted for, Spotted Lakes paid for an endorsement. I think it's ambiguous enough in light of the changed language that it clearly must be considered by this court. We've got to take that interpretation. In fact, I think even in Judge Higginbotham's case, I think it says you must accept a reasonable interpretation of the insurance. And I think this is very reasonable. We're not saying there is no requirement of negligence. That's what the word negligence, in this case, adds, that there has to be some current negligence. If we look at what the court did in Atufina, they looked at, oh, let's see. By the way, I'd point this out, too. One of the cases they cite, talk about a lot, is South Carolina Electric and say, that's it. We, I think we have your argument. Time is expired. No problem. We appreciate your detailed argument. And we will, no problem. And we will hear now some rebuttal from Mr. McMichael. Your Honor, the rule is that you look at the plain language of the endorsement. And if the analysis ends there, it ends there. There's a lot of judicial economy and efficiency that's all built into that very simple rule. And if you look at this language in this endorsement, the Texas Supreme Court and this court have said that that language, but only to the extent of your negligence, clearly embodies an intent to only cover by Keir's liability. The South Carolina Electric case is right on point and would be a great example for an explanation of these two columns or two silos, if you will, of additional insured endorsements, which they made no effort to address because it is what it is. If they can come up with a reasonable interpretation of this language that covers them, they win. If they can't, they lose. That's the deal. To get there, this court has to reject Adafina, Midcontinent, South Carolina Electric, and frankly, federal courts and state courts of appeals and Supreme Courts all around this country. You'll turn this on its head. I mean, it is boring. I get that. But you will turn this area of law on its head if you accept what they're trying to sell. Now, they suggest that there's not two ways to get to the same place, right? They suggest, well, if they didn't use the exact language, it has to be something materially different. It's not what the Adafina case in this court in the Midcontinent court said. There's a reason I put it here, is they said you can get to the same place two ways, by Keir's liability or negligence of the name insured. And by the way, they cited no case, right? It was a bit of a challenge on my part, so show us a case that says this language does what you say it does, and they don't. And they don't, for sure, want your honors to look at page two of this handout and see that. I mean, it just, come on, it doesn't make sense. So a couple things I will point out is that, and one thing that was even broached, is in their brief, they said, well, and this is an incredible admission on their part, if the endorsement had had the word liability for or liability from in it, we wouldn't even be before this court. So that's an acknowledgment, that if somehow those words were in this policy, we win. Well, your honors, this is a liability policy. And there's other provisions, as you might imagine, that say things like, we cover the insured's legal liability or legal responsibility, whatever the words are. So, you know, last thing I'll say is this, the Harbor insurance case. What that case says, at the end, is it rejects their concurrent negligence argument. It's the only case in the United States that we were able to find. I believe we said this in our brief. But it's the only one we can find, we're representing the court, where somebody in Schlumberger's position made this concurrent negligence type argument, or concurrent acts of negligence, is what I think was the actual phrase in that case. And the Harbor insurance case rejected that. So that's not going to fly here. Now, last thing he said is the Harbor insurance case said, well, if you charge an additional premium, that's a factor. Well, that's a factor if the language on its face is not clear. Texas Supreme Court in this court has said it is clear. Now, what he also didn't tell you is that the testimony in this case is that that premium was strictly administrative in nature, it was not substantive. What he also didn't tell you is that the Harbor insurance case said, somebody in the position of the insurance company is not going to go insure Schlumberger, one of the world's largest companies, or in that case, the other big entity, without doing some underwriting, not understanding the scope of the risk that they're accepting, and that's what insurance companies do. Boring as it is, that is what they do. Well, I mean, to be fair, we heard a FERC case yesterday that is more boring than insurance, so you're not the worst. Okay. Well, I will say this, that when my wife wants to go to bed and go to sleep at night, she will roll over from time to time and say, can you tell me what you do again? I try. I should try. It has been effective to date. But having said that, this has been a very well-argued case, and we recognize that it's important to get these things right. Yes, sir. Thank you, Your Honor. All right. Thank you very much for a well-argued case on both sides, and we will take the matter under advisement. We're going to take a short break and hear the final case by Zoom.